# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> INGMAR HERNANDEZ, <br><br> Defendant. | No. CR14-4088-MWB <br><br> ***REPORT AND RECOMMENDATION ON MOTION TO DISMISS*** |

Defendant Ingmar Hernandez (Hernandez) has filed a motion (Doc. No. 51) to dismiss Count 1 of the indictment as against him. Plaintiff (the Government) has filed a resistance (Doc. No. 87). The Honorable Mark W. Bennett, United States District Judge, has referred the motion to me for preparation of a report and recommended disposition. Because the motion has been well-briefed by both sides, I find that oral argument is not necessary and would cause undue delay. *See* N.D. Ia. L.R. 7(c). The motion is fully submitted and ready for decision.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 20, 2014, the Grand Jury returned a seventeen-count indictment (Doc. No. 9) naming eight defendants. Hernandez is charged only with regard to Count 1, which alleges conspiracy to defraud the United States by obstructing or interfering with governmental functions in violation of 18 U.S.C. § 371 (Section 371). The

---

[1] This motion is very similar to a motion (Doc. No. 29) previously filed by co-defendant Anna Baker. On December 29, 2014, I filed a Report and Recommendation (Doc. No. 52) in which I concluded that Baker's motion should be denied. The indictment's factual allegations against Hernandez differ in some respects from those against Baker.

indictment describes a series of events that allegedly took place after Jamal Dean (Dean) shot a Sioux City police officer on April 29, 2013. Basically, the indictment tells the story of Dean's flight and efforts to evade capture after the shooting. Each defendant is alleged to have known that Dean was a fugitive and, despite such alleged knowledge, to have played a part in assisting his escape while obstructing efforts to capture him. According to the indictment, an Iowa arrest warrant was issued for Dean shortly after the shooting and a variety of local, state and federal law enforcement authorities commenced a manhunt. Doc. No. 9 at 3. The federal authorities are alleged to have included Deputy United States Marshals and Special Agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives. *Id.* The indictment states that Dean was apprehended in Texas on May 5, 2013, while accompanied by two of the other defendants. *Id.* at 4.

The indictment contains the following allegations that arguably relate to Hernandez:

> 10. On April, 29, 2013, LEVON VARNE DEAN SR., (A/K/A LEE DEAN), STEFFAN DEAN, KIMBERLY SMITH, MONICA ROCHA-CONTRERAS, EVETTE MORRIS-HERNANDEZ, ESTEBAN HERNANDEZ, ANNA BAKER, and INGMAR HERNADEZ [sic],[2] all learned federal authorities were searching for Jamal Dean before they completed their interaction with Jamal Dean on or about April 29, 2013.
>
> ***
>
> THE OBJECTS OF THE CONSPIRACY
>
> 13. From on or about April 29, 2013, and continuing until about September 1, 2013, within the Northern District of Iowa and elsewhere, Jamal Dean and defendants, LEVON DEAN SR., (A/K/A LEE DEAN), STEFFAN DEAN, KIMBERLY SMITH, MONICA ROCHA-CONTRERAS, EVETTE MORRIS-HERNANDEZ, ESTEBAN HERNANDEZ, ANNA BAKER, and INGMAR HERNADEZ, and others known and unknown to the grand jury, knowingly and willfully conspired and agreed together and

---

[2] Hernandez's last name is spelled incorrectly throughout the indictment.

2

with each other, (and with other persons both known and unknown to the grand jury), to defraud the United States of and concerning its governmental functions and rights, hereafter described, that is: they conspired to interfere with and obstruct legitimate governmental activities of the United States Department of Justice (e.g., the United States Marshals Service ("USMS") and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF")) by interfering with and obstructing the federal investigation into the events of April 29, 2013, and the federal effort to assist in the apprehension of Jamal Dean, by deceit, craft, trickery, and by means that were dishonest.

THE MANNER AND MEANS OF THE CONSPIRACY

14. It was a part of the conspiracy that the defendants would by deceit, craft, trickery and dishonest means, defraud the United States by interfering with and obstructing the lawful governmental functions of the United States Department of Justice (e.g., the USMS and ATF) in that the defendants would receive, relieve, comfort, assist, and conceal Jamal Dean in his attempt to avoid capture and questioning.

15. It was further a part of the conspiracy that the defendants would make materially false, fictitious, and fraudulent statements or representations to the United States Department of Justice (e.g., the United States Marshals Service and the Bureau of Alcohol, Tobacco, Firearms, and Explosives).

16. It was still further a part of the conspiracy that the defendants would alter, destroy, mutilate, conceal, cover up, falsify, or make false entry in any record, document, or tangible object.

OVERT ACTS

17. In furtherance of the conspiracy and to affect the objects of the conspiracy, the following overt acts, among others, were committed in the Northern District of Iowa and elsewhere:

**Before Arrest of Jamal Dean**

***

H. On or about April 29, 2013, Jamal Dean used KIMBERLY SMITH'S and STEFFAN DEAN'S home phone to Call [sic] INGMAR HERNANDEZ and arranged for his (i.e., Jamal Dean's) transportation from KIMBERLY SMITH'S and STEFFAN DEAN'S home in Sioux City, Iowa to South Sioux City, Nebraska.

I. On or about April 29, 2013, MONICA ROCHA-CONTRERAS and INGMAR HERNADEZ picked-up Jamal Dean from KIMBERLY SMITH and STEFFAN DEAN'S home in a black 2003 Cadillac sedan.

J. On or about April 29, 2013, MONICA-ROCHA CONTRERAS and INGMAR HERNADEZ transported Jamal Dean from KIMBERLY SMITH'S and STEFFAN DEAN'S home to South Sioux City, Nebraska.

K. On or about April 29, 2013, MONICA ROCHA-CONTRERAS and INGMAR HERNADEZ transported Jamal Dean to a location near West 7th Street in South Sioux City, Nebraska.

L. On or about April 29, 2013, an unnamed conspirator known to the grand jury and Jamal Dean walked from a location near West 7th Street, South Sioux City, Nebraska to the home of an unnamed conspirator know to the grand jury near 5th Avenue in South Sioux City, Nebraska.

M. On or about April 30, 2013, one or more conspirators arranged for the transportation of Jamal Dean from the residence near 5th Avenue South Sioux City, Nebraska to ANNA BAKER'S home on the Winnebago Reservation in Winnebago, Nebraska.

N. On or about April 30, 2013, EVETTE MORRIS-HERNANDEZ and ESTEBAN HERNANDEZ picked-up Jamal Dean and INGMAR HERNADEZ at the residence near 5th Avenue South Sioux City, Nebraska in a 1999 Dodge Durango sports utility vehicle.

O. On or about April 30, 2013, EVETTE MORRIS-HERNANDEZ and ESTEBAN HERNANDEZ transported Jamal Dean from the residence near 5th Avenue, South Sioux City, Nebraska to ANNA BAKER'S home on the Winnebago Reservation, in Winnebago, Nebraska.

P. On or about April 30, 2013, ANNA BAKER welcomed EVETTE MORRIS-HERNANDEZ, ESTEBAN HERNANDEZ, INGMAR HERNADEZ, and Jamal Dean into her home on the Winnebago Reservation in Winnebago, Nebraska.

Q. On or about April 30, 2013, ANNA BAKER, EVETTE MORRIS-HERNANDEZ, ESTEBAN HERNANDEZ, INGMAR HERNANDEZ, and Jamal Dean discussed the shooting and what JAMAL DEAN'S next step should be.

*Id.* at 4-9. Thus, the indictment alleges that Hernandez joined a conspiracy to obstruct the efforts of federal authorities to apprehend Dean and that he took the following actions in furtherance of the alleged conspiracy: (a) he was involved in transporting Dean to various locations while knowing he was a fugitive and (b) he took part in discussions with Dean and others about what Dean should do next.

## II. HERNANDEZ'S MOTION

Hernandez's motion invokes Federal Rules of Criminal Procedure 12(b)(2) and 12(b)(3)(B) which state, in relevant part:

**(b) Pretrial Motions.**

\* \* \*

**(2) Motions That May Be Made at Any Time.** A motion that the court lacks jurisdiction may be made at any time while the case is pending.

**(3) Motions That Must Be Made Before Trial.** The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:

\* \* \*

(B) a defect in the indictment or information, including:

5

* * *

(v) failure to state an offense;

Fed. R. Crim. P. 12(b). While the motion makes reference to Rule 12(b)(2), *see* Doc. No. 51 at 1, Hernandez makes no argument that this court lacks jurisdiction. Instead, his arguments focus entirely on the question of whether the indictment's allegations state an offense against him. Doc. No. 51-1. In addressing Baker's motion, I noted that her jurisdictional argument under Rule 12(b)(2) merged with her Rule 12(b)(3)(B) arguments. Doc. No. 52 at 6. In other words, if the indictment states an offense, then this court has jurisdiction. The same situation exists here.

As for Rule 12(b)(3)(B), Hernandez argues that even if the allegations in the indictment are accepted as true, no violation of Section 371 occurred because his alleged actions did not target the United States, nor did they defraud the United States. He notes that certain allegations made against Baker are not made against him and argues that these distinctions are material. The Government disagrees. It argues that the allegations against Hernandez, while somewhat different from those against Baker, nonetheless set forth a viable claim that Hernandez violated Section 371.

### III. DISCUSSION

*A.  Does Count 1 State An Offense Against Hernandez?*

*1.  Applicable Standards*

An indictment is normally sufficient unless no reasonable construction can be said to charge the offense. *United States v. Nabors,* 45 F.3d 238, 240 (8th Cir. 1995). This means an indictment will survive a motion to dismiss "if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v. Carter*,

270 F.3d 731, 736 (8th Cir. 2001). In reviewing the sufficiency of an indictment, the court must accept the Government's allegations as true. *United States v. Steffen*, 687 F.3d 1104, 1107 n.2 (8th Cir. 2012).[3] The issue, then, is whether the indictment's allegations against Hernandez, when accepted as true, state a violation of Section 371.

### 2. *Overview of Section 371*

Section 371 reads as follows, in relevant part:

**Conspiracy to commit offense or to defraud United States**

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371. The Government notes that Hernandez is charged under the second clause of Section 371, which makes it unlawful for "two or more persons [to] conspire . . . to defraud the United States, or any agency thereof in any manner or for any purpose" if at least one of those persons commits "any act to effect the object of the conspiracy." The Supreme Court has explained Section 371 as follows:

> Section 371 is the descendent of and bears a strong resemblance to conspiracy laws that have been in the federal statute books since 1867. *See* Act of Mar. 2, 1867, ch. 169, § 30, 14 Stat. 484 (prohibiting conspiracy to "defraud the United States in any manner whatever"). Neither the original 1867 provision nor its subsequent reincarnations were accompanied by any particularly illuminating legislative history. This case has been preceded, however, by decisions of this Court interpreting the scope of the phrase "to defraud … in any manner or for any purpose." In those cases we have stated repeatedly that the fraud covered by the statute "reaches 'any

---

[3] As I noted in addressing Baker's motion, a Rule 12 motion may attack the sufficiency of the allegations but not the sufficiency of the evidence. Doc. No. 52 at 7-8. Hernandez does not suggest otherwise.

7

> conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government.'" *Dennis v. United States*, 384 U.S. 855, 861, 86 S.Ct. 1840, 1844, 16 L.Ed.2d 973 (1966), quoting *Haas v. Henkel*, 216 U.S. 462, 479, 30 S.Ct. 249, 253, 54 L.Ed. 569 (1910); *see also Glasser v. United States*, 315 U.S. 60, 66, 62 S.Ct. 457, 463, 86 L.Ed. 680 (1942); *Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924). We do not reconsider that aspect of the scope of § 371 in this case. Therefore, <u>if petitioners' actions constituted a conspiracy to impair the functioning of the [Rural Electrification Administration], no other form of injury to the Federal Government need be established for the conspiracy to fall under § 371</u>.

*Tanner v. United States*, 483 U.S. 107, 128 (1987) [emphasis added]. Similarly, the Eighth Circuit Court of Appeals has stated that in order to establish a violation of the second clause of Section 371, "the government must show that [the defendant] conspired 'to interfere with or obstruct one of [the United States'] lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest.'" *United States v. Murphy*, 957 F.2d 550, 553 (8th Cir. 1992) (quoting *McNally v. United States*, 483 U.S. 350, 359 n. 8 (1987)). The agreement between the alleged conspirators "need not be express, but rather can be an informal tacit understanding" that "can be proved entirely by circumstantial evidence." *Id.* at 552.

As Hernandez points out, Section 371 applies only when the United States is the target of the conspiracy. *Tanner,* 483 U.S. at 130 ("The conspiracies criminalized by § 371 are defined not only by the nature of the injury intended by the conspiracy, and the method used to effectuate the conspiracy, but also—and most importantly—by the *target* of the conspiracy.") [emphasis in original]. In *Tanner*, the defendants were convicted under Section 371 after conspiring to defraud a private entity – Seminole Electric Cooperative, Inc. (Seminole) – that received financial assistance from the federal government. *Id.* at 128-29. Specifically, defendant Conover, who was employed by Seminole, caused the company to enter into road-construction contracts with a friend –

defendant Tanner – that were favorable to Tanner. *Id.* at 111. Conover received certain benefits from Tanner after arranging these favorable contracts. *Id.* at 111-12. As it turns out, Seminole had funded the construction project with a loan guaranteed by the Rural Electrification Administration (REA), a federal agency. *Id.* at 111.

Both defendants appealed their convictions on grounds that a conspiracy to defraud a private entity does not implicate Section 371, even if that entity happens to receive assistance from a federal agency. *Id.* at 129. The Court agreed, rejecting the Government's argument that a private entity that is a "recipient of federal financial assistance and the subject of federal supervision, may itself be treated as 'the United States' for purposes of § 371." *Id.* The Court concluded that the Government's position improperly "substituted 'anyone receiving federal financial assistance and supervision' for the phrase 'the United States or any agency thereof' in § 371." *Id.* at 132. Thus, the convictions were vacated with regard to this theory.[4]

3. *Analysis*

Hernandez raises two arguments as to why the indictment's allegations against him do not fit the elements of an offense under Section 371: (1) the United States was not the target of the alleged conspiracy and (2) his alleged conduct did not "defraud" the United States. I will address these argument separately.

a. ***Was the United States the Target of the Alleged Conspiracy?***

The indictment alleges that shortly after an armed robbery occurred on April 15, 2013, Dean was investigated by state and federal authorities for various offenses,

---

[4] The Court remanded the case for further consideration of a second theory, which was that the defendants conspired to cause Seminole to make false statements to the REA. *Id.* Under that theory, the United States was the target of the conspiracy. *Id.*

including possession of a firearm and ammunition as a felon. Doc. No. 9 at 3, ¶¶ 4-5. The indictment further alleges that this joint state and federal investigation was still underway on April 24, 2013, when Dean committed a second armed robbery. *Id.*, ¶¶ 5-6. Next, the indictment alleges that a state court arrest warrant for Dean was issued on April 24, 2013, and that local and federal law enforcement officers began searching for him at that time. *Id.*, ¶ 6.

According to the indictment, a second state court arrest warrant for Dean was issued on April 29, 2013, after Dean shot a police officer. *Id.* at 3-4, ¶¶ 7-8. At that time, Deputy United States Marshals are alleged to have joined the existing search for Dean, meaning officials from multiple federal agencies (in addition to state and local agencies) were attempting to locate Dean after the shooting. *Id.* at 4, ¶ 9. Moreover, and critically, the indictment alleges that on this same date – April 29, 2013 – all of the defendants, including Hernandez, "learned federal authorities were searching for Jamal Dean." *Id.*, ¶ 10.

Thus, according to the indictment, when Hernandez allegedly took part in transporting Dean to various locations on April 29 and 30, 2013, and participated in discussions about the shooting and about what Dean should do next,[5] he knew Dean was wanted by federal authorities. Moreover, other alleged conspirators, possessing the same knowledge about federal involvement, are alleged to have taken other steps to frustrate the manhunt and investigation. *Id.* at 6-14, ¶ 17. Hernandez, however, correctly points out that Baker – unlike him – is also alleged to have (a) destroyed evidence and (b) lied to a federal agent. *Id.* at 10, 13, ¶¶ 17(CC), 17(DD) and 17(OO). The question is whether the lack of such allegations requires dismissal of the Section 371 charge against Hernandez. I find that it does not.

---

[5] See Doc. No. 9 at 8-9, ¶¶ 17(H) – 17(Q).

Accepting all allegations as true, the indictment sufficiently describes a conspiracy that targeted the United States and of which Hernandez was a co-conspirator. This situation is not akin to the rejected theory in *Tanner,* under which a conspiracy to defraud a private entity was alleged to fall within Section 371 because that entity received some assistance from the federal government. That theory would be analogous if the investigation and manhunt concerning Dean had been a state or local operation, with only some behind-the-scenes assistance from federal resources (such as the use of federal funds, databases, etc.).

Here, however, the indictment expressly alleges that Hernandez and the other defendants *knew* federal authorities were looking for Dean and that they took actions to frustrate this federal effort. The indictment thus describes an alleged conspiracy akin to the Section 371 theory that was approved in *Tanner* (in which the defendants caused Seminole to make false statements to a federal agency),[6] and it alleges that Hernandez took actions in furtherance of the conspiracy. I find that the indictment's allegations are sufficient to state a claim that Hernandez was part of an alleged conspiracy that targeted the United States within the meaning of Section 371. As such, I must recommend that Hernandez's motion be denied on this issue.

### b. Did Hernandez's Alleged Actions "Defraud" the United States?

Hernandez next argues that his alleged conduct does not support a Section 371 charge because simply riding with and talking with a state fugitive does not amount to "defrauding" the United States. He states: "Defendant is not accused of lying to the agents or of destroying evidence. Simply put, 'being there' is not 'defrauding.'" Doc. No. 51-1 at 6. In resisting this argument, the Government relies on the Supreme Court's

---

[6] *Tanner,* 483 U.S. at 132.

broad interpretation of the concept of "defrauding" for purposes of Section 371. Doc. No. 87-1 at 9-12. It notes, for example, that "defrauding" the United States simply means "impairing, obstructing, or defeating the lawful function of any department of government." *Id.* at 9 (citing *Dennis v. United States,* 384 U.S. 855, 861 (1966)).

The Government is correct that fraud under Section 371 goes beyond common law fraud. *Dennis*, 384 U.S. at 861. It includes any effort to interfere with or obstruct one of the federal government's lawful functions "by deceit, craft or trickery, or at least by means that are dishonest." *Murphy*, 957 F.2d at 553. Thus, "[c]onspiracies to defraud the United States under section 371 can take many forms." *Id.* at 554. In *Murphy*, for example, the defendant was alleged to have obtained sensitive information about an ongoing investigation and to have shared that information with a target of the investigation to help the target avoid detection. *Id.* The court found that under those facts, "[a] reasonable juror could properly conclude that Murphy intended to dishonestly obstruct a lawful government function." *Id.*

I agree with Hernandez that the allegations against him are less compelling than those against Baker. After all, in addition to allegedly harboring Dean in her home, Baker is alleged to have destroyed evidence and to have made a false statement to a federal agent. Nonetheless, and particularly in light of *Murphy*, I find that the indictment's allegations against Hernandez state a case that he conspired to defraud the United States. If those allegations are true, reasonable jurors could find that Hernandez, while knowing that federal agents were looking for Dean, interfered with that search by deceit, craft or trickery in the form of (a) participating in the movement of Dean to different locations to prevent his capture and (b) helping Dean plan further evasive actions. Thus, when read as a whole and reasonably construed, the indictment's allegations are sufficient to charge Hernandez with conspiracy to defraud the United States. I therefore recommend that his motion be denied on this ground, as well.

## IV. CONCLUSION AND RECOMMENDATION

For the reasons set forth herein, I RESPECTFULLY RECOMMEND that the motion (Doc. No. 51) by defendant Ingmar Hernandez to dismiss Count 1 of the indictment as to him be **denied**.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 21st day of January, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE