**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,

vs.

INGMAR HERNANDEZ,

          Defendant.

No. CR14-4088-8-MWB

**MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS**

_____

**TABLE OF CONTENTS**

I.    *INTRODUCTION AND BACKGROUND*.............................................2

II.   *LEGAL ANALYSIS* ...........................................................6
    A.    *Standard Of Review* .................................................6
    B.    *Objections To Report and Recommendation*...............................11
          1.   *Conspiring to defraud the United States* ...........................11
          2.   *Target of conspiracy* ...............................................17

III.  *CONCLUSION* ...............................................................18

# I.    INTRODUCTION AND BACKGROUND

In a seventeen-count Indictment returned on November 20, 2014, defendant Ingmar Hernandez is charged with conspiring to obstruct justice, in violation of 18 U.S.C. § 371.[1]    Specifically, the Indictment alleges, in pertinent part, that:

> 10.    On April, 29, 2013, LEVON VARNE DEAN SR., (A/K/A LEE DEAN), STEFFAN DEAN, KIMBERLY SMITH, MONICA ROCHA-CONTRERAS, EVETTE MORRIS-HERNANDEZ, ESTEBAN HERNANDEZ, ANNA BAKER, and INGMAR HERNANDEZ [sic], all learned federal authorities were searching for Jamal Dean before they completed their interaction with Jamal Dean on or about April 29, 2013.[2]
>
> . . . .
>
> THE OBJECTS OF THE CONSPIRACY
>
> 13.    From on or about April 29, 2013, and continuing until about September 1, 2013, within the Northern District of Iowa and elsewhere, Jamal Dean and defendants, LEVON DEAN SR., (A/K/A LEE DEAN), STEFFAN DEAN, KIMBERLY SMITH, MONICA ROCHA-CONTRERAS, EVETTE MORRIS-HERNANDEZ, ESTEBAN HERNANDEZ, ANNA BAKER, and INGMAR HERNADEZ, and others known and unknown to the grand jury, knowingly and willfully conspired and agreed together and with each other, (and with other persons both known and unknown to the grand jury), to defraud the United States of

---

[1]In addition to conspiracy to obstruct justice, Hernandez's seven co-defendants are also charged with making false statements, in violation of 18 U.S.C. § 1001, concealing evidence, in violation of 18 U.S.C. § 1519, accessory after the fact to the possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 3, and misprision of a felony, in violation of 18 U.S.C. § 4.

[2]Hernandez's last name is misspelled throughout the Indictment.

and concerning its governmental functions and rights, hereafter described, that is: they conspired to interfere with and obstruct legitimate governmental activities of the United States Department of Justice (e.g., the United States Marshals Service ("USMS") and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF")) by interfering with and obstructing the federal investigation into the events of April 29, 2013, and the federal effort to assist in the apprehension of Jamal Dean, by deceit, craft, trickery, and by means that were dishonest.

THE MANNER AND MEANS OF THE CONSPIRACY

14. It was a part of the conspiracy that the defendants would by deceit, craft, trickery and dishonest means, defraud the United States by interfering with and obstructing the lawful governmental functions of the United States Department of Justice (e.g., the USMS and ATF) in that the defendants would receive, relieve, comfort, assist, and conceal Jamal Dean in his attempt to avoid capture and questioning.

15. It was further a part of the conspiracy that the defendants would make materially false, fictitious, and fraudulent statements or representations to the United States Department of Justice (e.g., the United States Marshals Service and the Bureau of Alcohol, Tobacco, Firearms, and Explosives).

16. It was still further a part of the conspiracy that the defendants would alter, destroy, mutilate, conceal, cover up, falsify, or make false entry in any record, document, or tangible object.

OVERT ACTS

17. In furtherance of the conspiracy and to affect the objects of the conspiracy, the following overt acts, among others, were committed in the Northern District of Iowa and elsewhere:

**Before Arrest of Jamal Dean**

. . . .

H.    On or about April 29, 2013, Jamal Dean used KIMBERLY SMITH'S and STEFFAN DEAN'S home phone to Call [sic] INGMAR HERNANDEZ and arranged for his (i.e., Jamal Dean's) transportation from KIMBERLY SMITH'S and STEFFAN DEAN'S home in Sioux City, Iowa to South Sioux City, Nebraska.

I.    On or about April 29, 2013, MONICA ROCHA-CONTRERAS and INGMAR HERNADEZ picked-up Jamal Dean from KIMBERLY SMITH and STEFFAN DEAN'S home in a black 2003 Cadillac sedan.

J.    On or about April 29, 2013, MONICA-ROCHA CONTRERAS and INGMAR HERNANDEZ transported Jamal Dean from KIMBERLY SMITH'S and STEFFAN DEAN'S home to South Sioux City, Nebraska.

K.    On or about April 29, 2013, MONICA ROCHA-CONTRERAS and INGMAR HERNANDEZ transported Jamal Dean to a location near West 7th Street in South Sioux City, Nebraska.

L.    On or about April 29, 2013, an unnamed conspirator known to the grand jury and Jamal Dean walked from a location near West 7th Street, South Sioux City, Nebraska to the home of an unnamed conspirator know to the grand jury near 5th Avenue in South Sioux City, Nebraska.

M.    On or about April 30, 2013, one or more conspirators arranged for the transportation of Jamal Dean from the residence near 5th Avenue South Sioux City, Nebraska to ANNA BAKER'S home on the Winnebago Reservation in Winnebago, Nebraska.

N.    On or about April 30, 2013, EVETTE MORRIS-HERNANDEZ and ESTEBAN HERNANDEZ picked-up

Jamal Dean and INGMAR HERNADEZ at the residence near 5th Avenue South Sioux City, Nebraska in a 1999 Dodge Durango sports utility vehicle.

O. On or about April 30, 2013, EVETTE MORRIS-HERNANDEZ and ESTEBAN HERNANDEZ transported Jamal Dean from the residence near 5th Avenue, South Sioux City, Nebraska to ANNA BAKER'S home on the Winnebago Reservation, in Winnebago, Nebraska.

P. On or about April 30, 2013, ANNA BAKER welcomed EVETTE MORRIS-HERNANDEZ, ESTEBAN HERNANDEZ, INGMAR HERNANDEZ, and Jamal Dean into her home on the Winnebago Reservation in Winnebago, Nebraska.

Q. On or about April 30, 2013, ANNA BAKER, EVETTE MORRIS-HERNANDEZ, ESTEBAN HERNANDEZ, INGMAR HERNANDEZ, and Jamal Dean discussed the shooting and what JAMAL DEAN'S next step should be.

Indictment at 4-9.

Hernandez has filed a motion to dismiss. In his motion, Hernandez argues that, even if the allegations in the Indictment are assumed to be true, the Indictment fails to state a § 371 violation against him because his alleged actions did not target or defraud the United States. The prosecution filed a timely resistance to Hernandez's motion. The prosecution contends that the factual allegations in the Indictment state a viable § 371 violation against Hernandez.

Hernandez's motion to dismiss was referred to United States Magistrate Judge Leonard T. Strand, pursuant to 28 U.S.C. § 636(b). Judge Strand has filed a Report and Recommendation in which he recommends that Hernandez's motion to dismiss be denied. Judge Strand concluded that, accepting all of the allegations in the Indictment as true, the Indictment sufficiently describes a conspiracy that targeted the United States and of which

Hernandez was a co-conspirator. Judge Strand also concluded that the Indictment's allegations against Hernandez sufficiently describe how he conspired to defraud the United States. Therefore, Judge Strand recommended that Hernandez's motion to dismiss be denied.

Hernandez has filed objections to Judge Strand's Report and Recommendation. The prosecution has filed a timely response to Hernandez's objections. I, therefore, undertake the necessary review of Judge Strand's recommended disposition of Hernandez's motion to dismiss.

## II.    LEGAL ANALYSIS

### A.    Standard Of Review

I review the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* FED. R. CIV. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute

6

> does not require the judge to review an issue *de novo* if no
> objections are filed, it does not preclude further review by the
> district judge, *sua sponte* or at the request of a party, under a
> *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

*De novo* review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting *de novo* review is "distinct from any form of deferential review"). The *de novo* review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while *de novo* review generally entails review of an entire matter, in the context of § 636 a district court's required *de novo* review is limited to "*de novo* determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration

by the Article III judge of any issue need only ask." (emphasis added)).  Consequently, the Eighth Circuit Court of Appeals has indicated *de novo* review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989).  Despite this "specificity" requirement to trigger *de novo* review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994).  As a result, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general pro se objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record.").  Even if the reviewing court must construe objections liberally to require *de novo* review, it is clear to me that there is a distinction between making an objection and making no objection at all.  *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate.").  Therefore, I will strive to provide *de novo* review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give *de novo* review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review.  *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the

8

magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting *de novo* review with "clearly erroneous standard" of review, and recognizing *de novo* review was required because objections were filed). I am unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Med. Clinic, P.C.,* 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than *de novo* is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; see also FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need

only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, I believe one further caveat is necessary: a district court always remains free to render its own decision under *de novo* review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and I may choose to apply a less deferential standard.[3]

---

[3]The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will not result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting

As noted above, Hernandez has filed objections to Judge Strand's Report and Recommendation. I, therefore, undertake the necessary review of Judge Strand's recommended disposition of Hernandez's motion to dismiss.

### B.    Objections To Report and
### Recommendation

#### 1.    Conspiring to defraud the United States

Hernandez objects to Judge Strand's conclusion that the Indictment adequately alleges that he conspired to defraud the United States. He argues that the Indictment merely alleges that he was "going along for a ride" and, thus, it does not allege that he was defrauding the United States. The prosecution responds that the Indictment's allegations of active concealment and obstruction adequately plead a conspiracy to defraud under § 371.

"Indictments are normally sufficient unless no reasonable construction can be said to charge the offense." *United States v. Peterson*, 867 F.2d 1110, 1114 (8th Cir. 1989). "In reviewing the sufficiency of an indictment, [the court] accept[s] the government's allegations as true, without reference to allegations outside the indicting document." *United States v. Steffen*, 687 F.3d 1104, 1107 n. 2 (8th Cir. 2012) (quoting *United States*

---

*Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g., United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions *de novo*." (citation omitted)).

*v. Farm & Home Sav. Ass'n*, 932 F.2d 1256, 1259 n. 3 (8th Cir .1991)). As the Eighth Circuit Court of Appeals has observed:

> "An indictment adequately states an offense if 'it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted.'"

*United States v. Mann*, 701 F.3d 274, 288 (8th Cir. 2012) (quoting *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008) (quoting in turn *United States v. Hernandez*, 299 F.3d 984, 992 (8th Cir. 2002)); *accord Steffen*, 687 F.3d at 1109; *see also United States v. Polychron*, 841 F.2d 833, 834 (8th Cir. 1988) ("In order to be valid, an indictment must allege that the defendant performed acts which, if proven, constitute the violation of law for which he is charged. If the facts alleged in the indictment do not constitute a violation of law, the indictment is properly dismissed."). "An indictment is normally sufficient if its language tracks the statutory language." *Sewell*, 513 F.3d at 821.

"Section 371 proscribes two distinct types of conspiracies: conspiracies to commit a specific crime and conspiracies to defraud the United States." *United States v. Murphy*, 957 F.2d 550, 553 (8th Cir. 1992); *see United States v. Rozin*, 664 F.3d 1052, 1065 (6th Cir. 2012); *United States v. Alston*, 77 F.3d 713, 718 (3d Cir. 1996); *United States v. Brandon*, 17 F.3d 409, 422 (1st Cir. 1994); *United States v. Tham*, 960 F.2d 1391, 1399 (9th Cir. 1991); *United States v. Haga*, 821 F.2d 1036, 1039 (5th Cir. 1987). Here, Hernandez is charged with the second, more general, type of conspiracy. To convict Hernandez of conspiring to defraud the United States under § 371, the prosecution must

prove "an agreement to defraud the federal government and an act by one or more of the conspirators to effect the object of the conspiracy." *Murphy*, 957 F.2d at 552; *United States v. Campbell*, 848 F.2d 846, 851 (8th Cir. 1988); *see also United States v. Caldwell*, 989 F.2d 1056, 1059 (9th Cir. 1993). Conspiracy to defraud the United States does not require proof of an agreement to violate a specific federal statute or regulation. *United States v. Gjerde*, 110 F.3d 595, 601 (8th Cir. 1997). "Defrauding" under § 371 means obstructing the operation of any government agency by any "deceit, craft or trickery, or at least by means that are dishonest." *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924); *see Murphy*, 957 F.2d at 553. The prosecution need not have direct evidence of an explicit agreement. Instead, a "tacit understanding" among co-conspirators may be inferred from circumstantial evidence. *See United States v. Rojas*, 356 F.3d 876, 879 (8th Cir. 2004); *United States v. Nambo–Barajas*, 338 F.3d 956, 960–61 (8th Cir. 2003); *United States v. Pintar*, 630 F.2d 1270, 1275 (8th Cir. 1980).

Hernandez's initial objection appears to be based on his mistaken assumption that he must have personally committed an overt act in furtherance of the conspiracy to be convicted under § 371. The flaw in this assumption is that it is not necessary that Hernandez personally committed an overt act, if he was one of the conspirators when such an act was committed. It is well settled that, for the purposes of proving that a conspiracy exists, the overt acts of one co-conspirator may be imputed to all of the co-conspirators. *See United States v. Mohammed*, 600 F.3d 1000, 1007 (8th Cir. 2010) ("The requisite overt act is satisfied by a single overt act committed by one coconspirator") (citing *United States v. Falcone*, 311 U.S. 205, 210 (1940));*see also United States v. Enstam*, 622 F.2d 857, 867 (5th Cir. 1980) (only necessary for one co-conspirator to commit overt act); *United States v. Veltre*, 591 F.2d 347, 350 (5th Cir. 1979) (once conspiracy shown, proof of single overt act done in furtherance of conspiracy establishes the guilt of each member). The United States Supreme Court has pointed out

that "[t]he function of the overt act in a conspiracy prosecution is simply to manifest that the conspiracy is at work and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence." *Yates v. United States*, 354 U.S. 298, 334 (1957) (internal quotation marks and citation omitted), overruled on other grounds by *Burks v. United States*, 437 U.S. 1 (1978). Since the reason for requiring proof of an overt act is to demonstrate that the conspiracy is operative, the overt act may be lawful or unlawful conduct. *United States v. Buckner*, 610 F.2d 570, 573 (9th Cir. 1979); *United States v. Miller*, 491 F.2d 638, 644 (5th Cir. 1974).

The Indictment alleges that on April 29, 2013, Hernandez and all of the codefendants "learned federal authorities were searching for Jamal Dean." Indictment at 4. The Indictment goes on to allege that after learning this:

> From on or about April 29, 2013, and continuing until about September 1, 2013, within the Northern District of Iowa and elsewhere, Jamal Dean and defendants, LEVON DEAN SR., (A/K/A LEE DEAN), STEFFAN DEAN, KIMBERLY SMITH, MONICA ROCHA-CONTRERAS, EVETTE MORRIS-HERNANDEZ, ESTEBAN HERNANDEZ, ANNA BAKER, and INGMAR HERNANDEZ, and others known and unknown to the grand jury, knowingly and willfully conspired and agreed together and with each other, (and with other persons both known and unknown to the grand jury), to defraud the United States of and concerning its governmental functions and rights, hereafter described, that is: they conspired to interfere with and obstruct legitimate governmental activities of the United States Department of Justice (e.g., the United States Marshals Service ("USMS") and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF")) by interfering with and obstructing the

federal investigation into the events of April 29, 2013, and the federal effort to assist in the apprehension of Jamal Dean, by deceit, craft, trickery, and by means that were dishonest.

THE MANNER AND MEANS OF THE CONSPIRACY

14.  It was a part of the conspiracy that the defendants would by deceit, craft, trickery and dishonest means, defraud the United States by interfering with and obstructing the lawful governmental functions of the United States Department of Justice (e.g., the USMS and ATF) in that the defendants would receive, relieve, comfort, assist, and conceal Jamal Dean in his attempt to avoid capture and questioning.

15.  It was further a part of the conspiracy that the defendants would make materially false, fictitious, and fraudulent statements or representations to the United States Department of Justice (e.g., the United States Marshals Service and the Bureau of Alcohol, Tobacco, Firearms, and Explosives).

16.  It was still further a part of the conspiracy that the defendants would alter, destroy, mutilate, conceal, cover up, falsify, or make false entry in any record, document, or tangible object.

Indictment at 3-5.

Thus, the Indictment sufficiently alleges that Hernandez entered into an agreement to defraud the United States by taking actions to prevent Jamal Dean's capture by federal authorities. The Indictment then goes on to outline numerous overt acts taken by the co-conspirators in furtherance of the conspiracy, alleging in pertinent part that:

> H.  On or about April 29, 2013, Jamal Dean used KIMBERLY SMITH'S and STEFFAN DEAN'S home phone to Call [sic] INGMAR HERNANDEZ and arranged for his (i.e., Jamal Dean's) transportation from KIMBERLY SMITH'S and STEFFAN DEAN'S home in Sioux City, Iowa to South Sioux City, Nebraska.

I.    On or about April 29, 2013, MONICA ROCHA-CONTRERAS and INGMAR HERNADEZ picked-up Jamal Dean from KIMBERLY SMITH and STEFFAN DEAN'S home in a black 2003 Cadillac sedan.

J.    On or about April 29, 2013, MONICA-ROCHA CONTRERAS and INGMAR HERNADEZ transported Jamal Dean from KIMBERLY SMITH'S and STEFFAN DEAN'S home to South Sioux City, Nebraska.

K.    On or about April 29, 2013, MONICA ROCHA-CONTRERAS and INGMAR HERNADEZ transported Jamal Dean to a location near West 7th Street in South Sioux City, Nebraska.

L.    On or about April 29, 2013, an unnamed conspirator known to the grand jury and Jamal Dean walked from a location near West 7th Street, South Sioux City, Nebraska to the home of an unnamed conspirator know to the grand jury near 5th Avenue in South Sioux City, Nebraska.

M.   On or about April 30, 2013, one or more conspirators arranged for the transportation of Jamal Dean from the residence near 5th Avenue South Sioux City, Nebraska to ANNA BAKER'S home on the Winnebago Reservation in Winnebago, Nebraska.

N.    On or about April 30, 2013, EVETTE MORRIS-HERNANDEZ and ESTEBAN HERNANDEZ picked-up Jamal Dean and INGMAR HERNADEZ at the residence near 5th Avenue South Sioux City, Nebraska in a 1999 Dodge Durango sports utility vehicle.

O.    On or about April 30, 2013, EVETTE MORRIS-HERNANDEZ and ESTEBAN HERNANDEZ transported Jamal Dean from the residence near 5th Avenue, South Sioux City, Nebraska to ANNA BAKER'S home on the Winnebago Reservation, in Winnebago, Nebraska.

P.  On or about April 30, 2013, ANNA BAKER welcomed EVETTE MORRIS-HERNANDEZ, ESTEBAN HERNANDEZ, INGMAR HERNANDEZ, and Jamal Dean into her home on the Winnebago Reservation in Winnebago, Nebraska.

Q.  On or about April 30, 2013, ANNA BAKER, EVETTE MORRIS-HERNANDEZ, ESTEBAN HERNANDEZ, INGMAR HERNANDEZ, and Jamal Dean discussed the shooting and what JAMAL DEAN'S next step should be.

Indictment at 7-9.

These allegations, which I must accept as true, *see United States v. Steffen*, 687 F.3d 1104, 1107 n.2 (8th Cir. 2012), sufficiently identify multiple overt acts undertaken by the co-conspirators in furtherance of the conspiracy.[4]  Accordingly, I have no difficulty in finding that the Indictment sufficiently describes a § 371 conspiracy to defraud the United States and Hernandez's participation in that conspiracy.  Thus, this objection is overruled.

### 2.    *Target of conspiracy*

Hernandez also objects to Judge Strand's conclusion that the Indictment sufficiently alleges that the United States was the target of the conspiracy.  He argues that, because Jamal Dean was initially sought on a state arrest warrant for shooting a local police officer, his actions could not have impaired a United States governmental function.  This argument misstates the Indictment's allegations concerning the United

---

[4] To the extent that Hernandez is arguing that he cannot be convicted on a § 371 charge because he was merely present, that argument is premature and is a jury question. "'A [criminal] defendant is entitled to a theory of [the] defense instruction,' such as a "'mere presence'" instruction, if the instruction "'is timely requested, supported by the evidence, and correctly states the law.'"  *United States v. Cantrell*, 530 F.3d 684, 692 (8th Cir. 2009) (quoting *United States v. Meads*, 479 F.3d 598, 601 (8th Cir. 2007)).

States's involvement in the search for Jamal Dean. The Indictment alleges that, shortly after an armed robbery on April 15, 2013, Jamal was investigated by state and federal authorities for both state and federal criminal violations, including possession of a firearm and ammunition by a felon. Indictment at 3. The Indictment goes on to allege that this joint state and federal investigation was still underway on April 24, 2013, when Jamal committed a second armed robbery. *Id.* The Indictment next alleges that, after a state arrest warrant was issued for Jamal on April 24, 2013, both local and federal law enforcement officers began searching for him. *Id.* It is further alleged that a second state arrest warrant was issued for Jamal on April 29, 2013, after he shot a local police officer. *Id.* at 3–4. At this juncture, the United States Marshals Service is alleged to have joined the search for Dean. Significantly, the Indictment alleges that on this same date, Hernandez and his co-conspirators "learned federal authorities were searching for Jamal Dean." *Id.* After learning this, it is alleged that Hernandez was involved in transporting Jamal on April 29 and 30, 2013, and participated in discussions about what actions Jamal should take in response to the investigation. Moreover, other conspirators are alleged to have taken specific overt actions to frustrate the federal investigation, including destroying evidence and lying to federal law enforcement officers. *Id.* at 10, 13. I find that these allegations are sufficient to state a claim that Hernandez was part of a conspiracy that targeted the United States within the meaning of § 371. Thus, this objection is also overruled.

### III.    CONCLUSION

Therefore, for the reasons discussed above, I, upon a *de novo* review of the record, accept Judge Strand's Report and Recommendation and deny defendant Hernandez's motion to dismiss.

**IT IS SO ORDERED**.

**DATED** this 4th day of March, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA